## ROGERS v. KERR.

1. REPLEVIN: *For timber: Title to the land: Transfer to equity.*
   Rogers sued Kerr in replevin for a lot of cord wood and railroad ties cut upon his land. Kerr answered, claiming the timber and land as his own; exhibited his title, alleged that Rogers claimed under an illegal tax title, and that neither party was in possession; and prays that the cause be transferred to the equity docket, and Rogers' tax deed be canceled as a cloud upon his title, offering to pay the taxes paid by Rogers. Rogers demurred to the affirmative relief, and objected to the transfer. *Held:* That the demurrer was properly overruled and the cause transferred; and the tax sale appearing on the proof to be illegal, the tax deed was properly canceled; but Rogers was entitled to a decree for the taxes paid, and that they be made a charge upon the land.

2. TAX SALE: *School tax illegally levied.*
   The county court has no authority to levy any tax for a district school, except as voted at the annual school meeting and returned by the judges of that election; and if it does, a sale of land for taxes including such levy will be void.

APPEAL from *White* Circuit Court, in Chancery.

Hon. J. W. MARTIN, Circuit Judge, on exchange of circuits.

*W. R. Coody*, for appellant.

1. The title to land can not be tried in this action, but

where the title of chattels depends upon the ownership of the soil from which they have been taken, the title may be incidentally investigated, with a view to determine the ownership of the chattels. *Wells on Replevin*, *secs. 58, 79 to 85, and cases cited.*

Trees or timber severed from the soil become personal property, and the owner of the land may sustain replevin for them. *Ib., sec. 73; 23 Ark., 23.*

In a legal proceeding of this kind the aid of a chancery court can not be invoked for the purpose of destroying plaintiff's title, and then use it against him to defeat his action. *Sec. 4465 Gantt's Digest; 22 Ark., 531; 37 Ark., 185–6–7; Wells on Replevin, sec. 105; 6 Allen (Mass.), 229.*

2. The law was sufficiently complied with in the levy of the tax by the county court, for School District No. 8. Where the law authorizes the people to tax themselves by vote, and that vote is had, and the matter submitted to the court, and the court judicially determines that the tax *was voted*, the irregularities or character of evidence inducing that decision can not be inquired into collaterally. Cites *Const., art. 7, secs. 28, 30; Act Dec. 7, 1875, p. 72–3; 31 Ark., 83; 37 Ib, 643; 32 Ark., 139–140 and 503; 36 Ib., 450–1.*

*J. W. House*, for appellee.

1. The cause properly transferred to equity docket. The *title to the land* was the main issue in the cause. The title to the chattels depended upon the ownership of the soil, and, if irregularities existed in plaintiff's title, defendant had the right to have them inquired into, and if found to exist, to have his deed canceled.

2. Plaintiff's tax deed was void. No rate was voted by the electors of School District No. 8, and the county court had no authority to fix a rate or levy the tax. *32 Ark, 131; 29 Ib., 340; 33 Ib., 716.*

1. REPLEV-
IN:

For tim-
ber: Title
to the land:
Tranfer to
equity.

SMITH, J. Rogers brought replevin against Kerr for a lot of cord wood and railroad ties alleged to have been cut and removed from the plaintiff's land. The defense was that the timber and the land from which it was cut, belonged to the defendant. The answer stated that neither party was in possession of the land, exhibited the evidence of the defendant's title, averred that the plaintiff claimed under an illegal tax purchase, and prayed a transfer of the cause to equity and a cancellation of the plaintiff's tax deed as a cloud upon the defendant's title. The plaintiff demurred to the paragraph of the answer which sought affirmative relief, and objected to the proposed transfer. But his demurrer was overruled and a transfer was made. He then replied to the counter-claim, admitting he was not in possession of the land, and that his sole title thereto originated in the tax sale mentioned in the answer, but alleging that the sale was regular and the deed made in pursuance of it valid. At the hearing, the court canceled the plaintiff's title, and awarded to the defendant the wood and ties, which were the original subject of controversy.

It is certainly an odd thing to turn an action for the recovery of personal property into a proceeding to determine the title to real estate. But the ownership of the chattels depended upon the ownership of the soil. *Brock v. Smith, 14 Ark., 431.*

The answer presented a flat bar to the complaint. But could the defendant assume the offensive and obtain affirmative relief? He could have maintained an original bill for this purpose, as his antagonist was not in possession, and he could not for that reason maintain ejectment; and being sued about a matter which incidentally involved the title to the land, no good reason is perceived why he should not adopt such proceedings as would settle the whole controversy between him and the plaintiff.

Accordingly we find such to be the practice in States whose codes of procedure are nearly assimilated to our own. Thus in *Pitcher v. Hennessy*, *48 N. Y., 415*, which was an action to recover damages for failing to perform an agreement, the defendant prayed for and obtained a reformation of the contract; the correction of the mistake showing a complete excuse for non-performance.

In *Walsh v. Hall*, *66 N. C., 233*, the defendant was sued for the conversion of a horse, and was permitted to set up the fact that he had sold the horse to the plaintiff in exchange for land, and to ask for a rescission of the contract of exchange upon the grounds that the plaintiff had fraudulently deceived him in regard to the situation of the land.

*Massie v. Stradford*, *17 Ohio St., 596*, was an action for trespass to lands. The defendant caused the party under whom he claimed to be made a co-defendant, and the latter, by cross-petition, set up his equitable ownership of the land, and asked a decree against the plaintiff for the legal title, and an injunction against the further prosecution of the action for trespass.

The defendant traced his title back to the State, and it is apparently good, *provided* the tax sale of 1878, at which the plaintiff purchased, were out of the way.

It is admitted on the face of the pleadings that the lands in dispute lie in School District No. 8, of White County, and that a tax of five mills for district school purposes was levied for the year 1877, by the county court, and extended upon these lands, and that this tax was included in the amount for which the lands were sold. The defendant contended that neither had the electors of the district voted such a rate, nor had the judges of election so certified. 2. TAX SALES: School tax illegally levied.

The tax for the support of district schools is imposed upon the property of the district by the electors. The county court has no authority to make any levy for this

purpose, except as voted at the annual school meeting and returned by the judges of that election.   *C. & F. R. Co. v. Parks, 32 Ark., 131; Hodgkin v. Fry, 33 Ib., 716.*

The fifty-sixth section of the common school act of December 7, 1875, directs that the ballots shall have written or printed on them the words " for tax " or " against tax," and the amount of tax the voter desires levied.  A return is to be made to the county court, which is to ascertain whether a majority of the votes cast be for tax, and if so, then the amount of taxes voted.  The rate to be levied is determined by the largest amount sanctioned by a majority vote.  If no rate has received a clear majority, the votes cast for the highest rate are to be counted for the next highest rate voted for, and so on, until some rate shall receive a majority of all votes cast.

The return for this election is exhibited.  From this we can see that fourteen electors attended ; that directors were voted for; that thirteen voted for maintaining a school and for levying a tax.  But it was impossible for the county court to determine with certainty, from an inspection of the record and proceedings of the school meeting, what particular rate was intended to be levied by the electors. No rate whatever is mentioned or indicated, and the county court had no right to assume that the maximum rate was intended.

This illegal levy vitiated the tax sale.   *Worthen v. Badgett, 32 Ark., 496.*

*Tax purchaser entitled to a lien for taxes paid when sale is illegal.* It follows that the decree below was substantially correct.  But it neglected to provide for the refunding of the purchase money paid at the sale, and subsequent taxes. The answer offered to indemnify the plaintiff for any outlays he might have incurred on account of said taxes, and tendered $31.55, which was averred to be the amount so expended.  The reply made no issue on this point.  The

decree is therefore affirmed with this modification, that the defendant be required to pay to the plaintiff the aforesaid sum of $31.55, which is to be a charge on the lands. The costs of this court are adjudged against the appellee, and the cause is remanded for execution of the decree.